# EXHIBIT A

**LOPEZ MCHUGH, LLP**
JAMES J. McHUGH, JR.
REGINA SHARLOW JOHNSON
NIKI A. TRUNK
712 East Main Street, Suite 2A
Moorestown, New Jersey 08057
Telephone: (856) 273-8500
Facsimile: (856) 273-8502

And

1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914

*Attorneys for Plaintiffs*

RUSH!

| | |
|---|---|
| STEVEN KELLIE, an individual, and LORI KELLIE, an individual, and as husband and wife,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVOL, INC., a corporation, BARD DEVICES, INC., a corporation, and C.R. BARD, Inc., a corporation, and DOES 1 through 100, inclusive,<br><br>*Defendants*. | **SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY**<br><br>**LAW DIVISION**<br><br>Docket No.<br><br>**CIVIL ACTION** |

From the State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice complex, CN-971, Trenton, NJ 08625. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

DATED: 6/13/2008

THEODORE J. FETTER
Acting Clerk of the Superior Court

Name of Defendant to be Served: C.R. Bard, Inc.
Address of Defendant to be Served: 730 Central Avenue
Murray Hill, New Jersey 07974

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
1st Fl., Hall of Records
101 S. Fifth St.
Camden, NJ 08103

LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Box DN-209
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts., P.O. Box 615
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street, P.O. Box 129
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building
Third Floor
1 Kennedy Sq., P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
71 Monument Park
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Pl., P.O. Box 910
Morristown, NJ 07960-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 345-7171

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 18
Salem, NJ 08079

LAWYER REFERRAL
(856) 935-5628
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Fl.
P.O. Box 3000
Somerville, NJ 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

| | |
|---|---|
| **UNION COUNTY:**<br>Deputy Clerk of the Superior Court<br>1st Fl., Court House<br>2 Broad Street<br>Elizabeth, NJ 07207-6073 | LAWYER REFERRAL<br>(908) 353-4715<br>LEGAL SERVICES<br>(908) 354-4340 |
| **WARREN COUNTY:**<br>Deputy Clerk of the Superior Court<br>Civil Division Office<br>Court House<br>413 Second Street<br>Belvidere, NJ 07823-1500 | LAWYER REFERRAL<br>(908) 267-5882<br>LEGAL SERVICES<br>(908) 475-2010 |

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
**Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the black bar is not completed or if attorney's signature is not affixed.**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: CK CG CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| | | |
|---|---|---|
| ATTORNEY/PRO SE NAME<br>Niki A. Trunk | TELEPHONE NUMBER<br>(856) 273-8500 | COUNTY OF VENUE<br>Camden |
| FIRM NAME (if applicable)<br>Lopez McHugh, LLP | | DOCKET NUMBER (When available) |
| OFFICE ADDRESS<br>712 E. Main Street, Suite 2A, Moorestown, NJ 08057 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND<br>[X] YES [ ] NO |
| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Steven Kellie, an individual, and Lori Kellie, an individual and as husband and wife, Plaintiffs | CAPTION<br>Steven Kellie, an individual, and Lori Kellie, an individual, and as husband and wife v. Davol, Inc, a corporation, Bard Devices, Inc., a corporation, C.R. Bard, Inc., a corporation and Johns Does 11-20. | |
| CASE TYPE NUMBER<br>(See reverse side for listing)<br>606 | IS THIS A PROFESSIONAL MALPRACTICE CASE? [ ] YES [X] NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. | |
| RELATED CASES PENDING?<br>[ ] YES [X] NO | IF YES, LIST DOCKET NUMBERS | |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?<br>[ ] YES [X] NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN<br>[ ] NONE<br>[X] UNKNOWN | |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| | |
|---|---|
| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? [ ] YES [X] NO | IF YES, IS THAT RELATIONSHIP [ ] EMPLOYER-EMPLOYEE [ ] FRIEND/NEIGHBOR [ ] OTHER (explain) [ ] FAMILIAL [ ] BUSINESS |
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? [X] YES [ ] NO | |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:

| | |
|---|---|
| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? [ ] YES [X] NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: |
| WILL AN INTERPRETER BE NEEDED? [ ] YES [X] NO | IF YES, FOR WHAT LANGUAGE: |

ATTORNEY SIGNATURE

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**
151 NAME CHANGE
175 FORFEITURE
302 TENANCY
399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502 BOOK ACCOUNT (debt collection matters only)
505 OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
506 PIP COVERAGE
510 UM or UIM CLAIM
511 ACTION ON NEGOTIABLE INSTRUMENT
512 LEMON LAW
801 SUMMARY ACTION
802 OPEN PUBLIC RECORDS ACT (SUMMARY ACTION)
999 OTHER (Briefly describe nature of action)

**Track II — 300 days' discovery**
305 CONSTRUCTION
509 EMPLOYMENT (other than CEPA or LAD)
599 CONTRACT/COMMERCIAL TRANSACTION
603 AUTO NEGLIGENCE – PERSONAL INJURY
605 PERSONAL INJURY
610 AUTO NEGLIGENCE – PROPERTY DAMAGE
699 TORT – OTHER

**Track III — 450 days' discovery**
005 CIVIL RIGHTS
301 CONDEMNATION
602 ASSAULT AND BATTERY
604 MEDICAL MALPRACTICE
606 PRODUCT LIABILITY
607 PROFESSIONAL MALPRACTICE
608 TOXIC TORT
609 DEFAMATION
616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617 INVERSE CONDEMNATION
618 LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**
156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303 MT. LAUREL
508 COMPLEX COMMERCIAL
513 COMPLEX CONSTRUCTION
514 INSURANCE FRAUD
701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Mass Tort (Track IV)**
241 TOBACCO
248 CIBA GEIGY
264 PPA
266 HORMONE REPLACEMENT THERAPY (HRT)
271 ACCUTANE
272 BEXTRA/CELEBREX
274 RISPERDAL/SEROQUEL/ZYPREXA
275 ORTHO EVRA
278 DEPO-PROVERA
601 ASBESTOS
619 VIOXX

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."**

Please check off each applicable category:

☐ Verbal Threshold ☐ Putative Class Action ☐ Title 59

**LOPEZ McHUGH LLP**
JAMES J. McHUGH, JR.
REGINA SHARLOW JOHNSON
NIKI A. TRUNK
712 East Main Street, Suite 2A
Moorestown, New Jersey 08057
Attorneys for Plaintiff
Telephone: (856) 273-8500
Facsimile: (856) 273-8502

And

1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914

*Attorneys for Plaintiffs*

RECEIVED
2008 JUN 13 PM 2:05

| | |
|---|---|
| STEVEN KELLIE, an individual, LORI KELLIE, an individual, and as husband and wife, | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION<br>: CAMDEN COUNTY HALL OF JUSTICE |
| | : DOCKET NO.: |
| Plaintiff, | : |
| v. | : **CASE CODE 606** |
| DAVOL, INC. a corporation, BARD DEVICES, INC., a corporation, C.R. BARD, INC., a corporation, and and DOES 1 through 100, inclusive, | : **<u>COMPLAINT AND JURY DEMAND</u>** |
| Defendants, | : |

Plaintiffs STEVEN KELLIE AND LORI KELLIE, husband and wife, residing at 424 Seal Drive, Adrian, Michigan 49221 (hereinafter referred to as "Plaintiffs"), by and through their undersigned attorneys, hereby sue the defendants, DAVOL, INC. ('DAVOL"), which has its principal place of business at 100 Sockanosset Crossroad,

Cranston, Rhode Island 02920, BARD DEVICES, INC. ("BARD DEVICES"), which has its principal place of business at 730 Central Avenue, Murray Hill, New Jersey 07974, and C.R. BARD, INC. ("C.R. BARD"), which has its principal place of business at 730 Central Avenue, Murray Hill, New Jersey 07974, and DOES 1 through 100, inclusive, and allege as follows:

**NATURE OF THE CASE**

1. Plaintiffs bring this action for damages suffered by Plaintiffs as a proximate result of the negligent and wrongful conduct of Defendants DAVOL, BARD DEVICES, C.R. BARD and DOES 1 through 100, inclusive, and each of them, in connection with the design, development, manufacture, testing, packaging, promoting, marketing, labeling, distribution and/or sale of the Bard® Composix® Kugel® Hernia Repair Patch ("Kugel Patch").

2. Defendants designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold the defective and unreasonably dangerous Kugel Patch for use in repairing hernias.

3. Due to the defective nature of the Kugel Patch, the Food and Drug Administration ("FDA") was forced to issue a Class I recall of the product on three separate occasions since December 22, 2005.

4. Defendants concealed their knowledge of the defects in the Kugel Patch from Plaintiffs, and Plaintiff's physicians and hospitals and the FDA. As a result, Plaintiff STEVEN KELLIE agreed to be implanted with the Kugel Patch on August, 30 2005.

5. The Kugel Patch ultimately failed causing Plaintiff to suffer, *inter alia*, severe abdominal pain, nausea, vomiting, severe infection, and open wounds and purulent drainage at the location where the Kugel Patch had been implanted. Plaintiff underwent extensive treatment and several surgical procedures to treat these conditions, none of which were successful. Plaintiff eventually underwent surgery in or around July 2005 to remove the product.

6. Plaintiff developed severe complications after the removal surgery. These included, *inter alia*, an abnormal enterocutaneous fistulae, sepsis, purulent drainage, and recurrent incisional hernia. These complications required further extensive treatment and multiple surgical procedures and hospitalizations and were not finally resolved until sometime in early 2008.

7. Consequently, Plaintiffs seek compensatory and punitive damages as a result of STEVEN KELLIE'S use of the Kugel patch, which has caused and will continue to cause Plaintiff to suffer physical pain, mental anguish, medical, and other expenses.

**VENUE**

8. Venue is proper pursuant to R. 4:3-2 (b). as Defendants BARD DEVICES and C.R. BARD both do business in the County of Camden, State of New Jersey.

**PARTIES**

**Plaintiffs**

9. Plaintiff STEVEN KELLIE is, and at all times relevant was, a citizen and resident of the city of Adrian, county of Lenawee, state of Michigan. Plaintiff brings this action against Defendants for the damages he suffered as a result of being implanted with the Kugel Patch. Plaintiff believes and alleges that the Kugel Patch was designed,

developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold by Defendants.

10. Plaintiff LORI KELLIE is an individual and at all times relevant is and was, a citizen and resident of the city of Adrian, county of Lenawee, state of Michigan. Plaintiffs LORRETA KELLIE and STEVEN KELLIE were and are, at all times relevant to this action, legally married as husband and wife. LORRETA KELLIE brings this action for, *inter alia*, the loss of consortium, comfort, and society she has suffered due to the personal injuries suffered by her husband STEVEN KELLIE.

**Defendants**

11. Upon information and belief, Defendant DAVOL is, and at all times relevant to this action was a wholly owned subsidiary of BARD DEVICES, which is a wholly owned subsidiary of C.R. BARD, INC. At all times relevant, DAVOL is and was a corporation duly organized and existing under the laws of the state of Delaware, with its principal place of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920. DAVOL, at all times relevant to this action, through its officers, directors, agents, servants, employees, and representatives, designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold by Defendants to distributors, physicians, hospitals, and medical practitioners, the Kugel Patch to be surgically implanted in patients throughout the United States, including the state of New Jersey.

12. Defendant BARD DEVICES is, and at all times relevant to this action was, a wholly owned subsidiary of C.R. BARD and is the corporate parent/stockholder of DAVOL. BARD DEVICES is a corporation duly organized and existing under the laws

of the state of New Jersey. BARD DEVICES, through the officers, directors, agents, servants, employees, and representatives of its subsidiary, DAVOL, at all times relevant to this action, designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold to distributors, physicians, hospitals, and medical practitioners, the Kugel Patch to be surgically implanted in patients throughout the United States, including the state of New Jersey.

13. C.R. BARD is the corporate parent/stockholder of DAVOL and BARD DEVICES. C.R. BARD is a corporation duly organized and existing under the laws of the state of New Jersey. C.R. BARD, through its officers, directors, agents, servants, employees, and representatives, and those of its subsidiaries, designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold to distributors, physicians, hospitals, and medical practitioners, the Kugel Patch to be surgically implanted in patients throughout the United States, including the state of New Jersey. C.R. BARD also manufactures and supplies DAVOL with material that forms part of the Kugel Patch.

14. The true names and capacities, whether individual, corporate, associate or otherwise, of other certain designers, developers, manufactures, testers, packagers, labelers, promoters, marketers, distributors and/or sellers are sued herein as DOES 1 through 100, inclusive, and each of them, in that the identity of said defendants are presently unknown to Plaintiffs who therefore sue these Defendants by said fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to show the true names and capacities of said DOE defendants when their identities have been ascertained

15. Plaintiff is informed and believes, and thereupon alleges, that Defendants DOES 1 through 100, inclusive, and each of them, were authorized to and did, conduct business in the County of Camden and/or the State of New Jersey. Plaintiffs are further informed and believe, and thereupon allege, that Defendants DOES 1 through 100 were and/or are, in some way or manner, responsible for and liable to Plaintiffs for the events, happenings, and damages alleged in this Complaint.

16. All references made to "Defendants" throughout this Complaint shall be construed as referring to DAVOL, BARD DEVICES, C.R. BARD, and DOES 1 through 100, inclusive, and each of them.

17. Plaintiffs are informed and believe, and thereupon allege, that at all times relevant to this action, each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, predecessor in-interest, alter ego, joint venturer, and/or other representative of each of the remaining Defendants and was acting in such capacity in undertaking the acts, conduct, and omissions alleged in this Complaint.

18. Plaintiffs allege that the corporate form of Defendants was a sham and should be disregarded because there exists and, at all times herein mentioned, there existed a unity of interest in ownership between and among these Defendants such that any individuality and separateness between theses Defendants has ceased and/or never existed; in that these Defendants, and each of them are the alter-egos of one another and exerted direction and control over each other. Adherence to the fiction of a separate and independent existence of Defendants, as separate entities distinct from one another will permit an abuse of the corporate privilege, sanction a fraud upon plaintiff and other

recipients of the Kugel Patch, and promote injustice. Defendants, and each of them, encouraged, directed, condoned and ratified the negligent, willful, intentional, and wrongful acts, omissions, and conduct of each and all Defendants.

19. The following facts regarding the operations of the corporate Defendants support disregard of the corporate fiction: (1) corporate formalities for all of the wholly-owned subsidiaries were ignored and were not observed; (2) property was not kept separate and apart between the parent corporations and the wholly-owned subsidiaries; (3) direct deposits were made into bank accounts of subsidiaries which were controlled by the parent corporation and consolidated into the parent's deposit accounts; (4) the parent corporation at all times maintained 100% financial interest in all subsidiaries and maintained control over the subsidiaries on an operational basis both by appointing the chief operation officer of each subsidiary and by top down management; (5) the subsidiaries are used or established for the business purposes of the parent, and are the means by which the parent corporation conducted its business; and (6) the subsidiary facilities were not reasonably capitalized in light of the nature and risk of their business.

20. Additionally, Plaintiffs allege that at all relevant times, the corporate Defendants have operated as a single business enterprise to achieve a common business purpose. Parent corporations and any wholly-owned subsidiaries were not operated as separate and individual entities, but rather integrated and commingled their resources to achieve a common business purpose and conducted their operations as follows: (1) a single and common board of directors and the same members existed between the parent and subsidiaries; (2) the same centralized and consolidated accounting and financial reporting was used by both the parent and the subsidiaries for both internal purposes and

external purposes such as for the Internal Revenue Services and annual financial reports; (3) parent corporations paid the wages of all employees, agents, and representatives of the subsidiary corporation; (4) common business names are and were used by the parent and subsidiaries and the parent corporations' capital and credit lines are and were used to fund and operate the subsidiaries.

21. All of the subsidiaries of Defendant parent corporations were established simply as shells, instrumentalities, and conduits through which the parent conducted its business, and therefore, the corporate fiction must be disregarded to prevent fraud or injustice. Each constituent corporation may be held liable for the obligations incurred by the other component entities since these Defendants operated as a single business enterprise to achieve a common business purpose.

22. The Defendant parent corporations have intentionally operated all subsidiaries in a manner that left the subsidiaries without assets sufficient to satisfy the claims of the plaintiff and other claimants by taking complete control and possession of the subsidiaries' revenues and receivables. All monies received as proceeds in the sales of products by the subsidiary corporations were maintained and received by the defendant parent corporations to fund their own operations and were not maintained at the subsidiary level.

23. At all times herein mentioned the Defendants, and each of them, were engaged in the business of or were successors in interest to, entities engaged in the business of developing, testing, designing, manufacturing, fabricating, inspecting, marketing, labeling, promoting, packaging, distributing and selling the Kugel Patch, which was implanted into Plaintiff STEVEN KELLIE.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

24. This action involves the Kugel Patch designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold by Defendants and their agents between 2001 and January 2007.

25. The Kugel Patch line of products, invented by Dr. Robert D. Kugel, was first manufactured by Surgical Sense, Inc., starting in or around 1996. In January of 2000, C.R. Bard acquired the Kugel line of hernia repair products from Surgical Sense, Inc.

26. In October 2000, Defendants, C.R. BARD and BARD DEVICES through their DAVOL subsidiary submitted a 510(k) notification of intent to market the Kugel Patch. The Federal Drug Administration (hereinafter the "FDA") approved the Kugel Patch for marketing as a Class II medical device in January 2001.

27. The Kugel Patch is a two sided "dual mesh" prosthetic device developed to repair ventral (hernias of the abdominal region) and incisional hernias and was indicated by Defendants as an alternative to inguinal hernia repairs as well. The Kugel Patch is inserted behind the hernia defect in the abdomen through a small incision. In order to fit through the small incision the mesh is folded in half. Once inside the abdomen the mesh re-deploys as a result of a hard "memory recoil ring" (or "PET coil ring") that surrounds the mesh.

28. The two sides of the Kugel Patch are composed of two very different materials; with two very different purposes. Basically, the patch has a "sticky" side and a "slick" side. The adhesive side is designed to face the abdominal wall and is composed of a double layer of Marlex™ (monofilament polypropylene or PPM). This fabric has a very high tissue ingrowth factor - essentially making it like an adhesive. The 'slick' side

of the patch is intended to face the bowels and is composed of expanded Teflon (ePTFE). This expanded Teflon fabric has a very low tissue ingrowth factor and is designed to shield the soft tissue of the bowels and other organs from the "sticky" Marlex™ side of the Patch.

29. The inherently adhesive qualities of the Marlex™ side of the Kugel Patch make it imperative that it never comes in contact with the bowels and other organs.

30. Due to the design, manufacturing, and labeling defects present, this can occur when the mesh folds over on itself, the mesh wrinkles during placement or the mesh pulls away from the abdominal wall allowing bowel to loop and adhere to the Marlex™ (adhesive) side.

31. As a result, the mesh can: adhere (through tissue ingrowth) to vital organs and intestines; twist around the bowels and organs and cause strangulation and/or serious obstructions; cause necrosis of the organ tissue; become impossible to remove without also removing large portions of the bowel; develop infections; and lead to peritonitis, sepsis, organ shutdown and even death.

32. The plastic 'memory recoil' ring in the Kugel Patch was intended as a way to maintain integrity of the shape of the patch, and in doing so, keep the 'sticky' side (Marlex™/PPM side) away from the sensitive organs and intestines.

33. Due to the design, manufacturing and labeling defects the memory recoil ring is prone to failure in several ways, including: pulling apart at the weld; breaking away from the weld; kinking, bending and folding directly across from the weld; and separating or tearing from patch material.

34. On information and belief, these defects and/or others were caused by multiple design and manufacturing errors and oversights, including but not limited to:. failing to properly test the weld strength of the rings; failing to run strength tests on the larger size rings; sewing lines damaging the ring during the manufacturing process and causing it to splinter or fracture; mesh shifting during sewing resulting in a 'shrunken' pocket causing the ring to buckle; the weld joint being placed at an incorrect location in the patch; and poor design and technique instruction by Defendants causing the physicians' staples and/or sutures to damage the ring during placement.

35. When the memory recoil ring malfunctions, numerous serious problems can occur, including:

a. the sharp/fractured PET plastic of the memory recoil ring can pierce the bowels or organs;

b. the ring can force its way through the abdominal wall and skin;

c. the ring can bend or break within the patch, causing it to lose its shape and forcing the "sticky" side onto the bowels and organs;

d. the ring can kink opposite the weld, pulling the patch away from the abdominal walls allowing the bowel to loop up and onto the "sticky" side;

e. the ring can slide upon itself within the patch, pulling the patch into a ball or causing it to pull away from the abdominal wall; AND

f. the ring and/or the patch can otherwise fail to perform as intended, represented and/or designed.

36. The resulting injuries and damages from this ring failure include: fistulae created by the perforation of the bowels and other organs; perforation of the abdominal wall and skin; internal bleeding and necrosis of tissue; strangulation and/or serious obstructions of the bowels and organs; recurrence of hernias and prolonged

hospitalizations; the necessity of removing large portions of the bowel; infections; and can lead to peritonitis, sepsis, organ shutdown, and even death.

37. Immediately after the Kugel Patch was placed on the market, Defendants began receiving actual notices of memory ring failures as well as injuries stemming from the Kugel Patch.

38. Defendants knowingly, willfully, and intentionally concealed and/or misrepresented their knowledge of the defective and unreasonably dangerous condition of the Kugel Patch from Plaintiff, his health care providers, and the general public.

39. Defendants were required to conduct post market surveys as part of the device validation process. On or about January 2006, the FDA inspected a Kugel Patch manufacturing facility belonging to Defendants. This inspection resulted in the FDA issuing an Establishment Inspection Report ("EIR") in 2006. The 2006 EIR found that the post market survey validation process of the device was incomplete and failed to include all data from physicians surveyed during this time, including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of physician surveyors were actively concealed by Defendants from Plaintiffs, the healthcare community, and the general public.

40. No later than September 2004, Defendants became aware and obtained knowledge of serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the manufacturing plant, Defendants found the corrective measures to be ineffective and the process still not in control. Defendants were aware that these weld issues had existed from the time the Kugel Patch was placed on the market and all current sizes and lots suffered from this dangerous defect. This

information was intentionally withheld at this time from Plaintiff, the healthcare community, the FDA, and the general public.

41. According to the 2006 EIR, DAVOL corporate executives informed the FDA that the spring and summer period of 2005 showed a marked increase in the number of adverse event complaints regarding the Kugel Patch and the memory recoil ring.

42. In spite of their knowledge of increasing complaints and complications, Defendants waited until August 30, 2005 to initiate a partial Kugel Patch *distribution* hold.

43. Even though Defendants realized the need for this distribution hold, they actively and intentionally chose not to immediately inform Plaintiffs, Plaintiffs' physicians, the FDA, and the general public.

44. Defendants have since admitted that the product quality hold and release procedure was not applied on a timely basis.

45. As a result of this dangerous and defective condition, and the numerous serious injuries that have resulted, the FDA issued Class 1 recalls of the X-Large Oval, Large Oval and Large Circle varieties of the Kugel Patch. A Class 1 recall is the highest level of recall available to the FDA. It is issued when the FDA believes a medical product is dangerous or defective and predictably could cause serious health problems or death.

46. On December 22, 2005 and January 13, 2006, Defendants announced the recall of the X-Large Kugel Patch. Subsequently, in March of 2006, the Defendants announced the recall of the Large Kugel Patch as well.

47. Under these FDA recalls, the following products were subject to recall:

| | | |
|---|---|---|
| PC#0010206 Bard Composix Kugel | Extra Large Oval | 8.7" x 10.7" |
| PC#0010207 Bard Composix Kugel | Extra Large Oval | 10.8" x 13.7" |
| PC#0010208 Bard Composix Kugel | Extra Large Oval | 7.7" x 9.7" |
| PC#0010209 Bard Composix Kugel | Large Oval | 6.3" x 12.3" |
| PC#0010202 Bard Composix Kugel | Large Oval | 5.4" x 7" |
| PC#0010204 Bard Composix Kugel | Large Circle | 4.5" |

48. Then, on January 10, 2007, Defendants expanded the recall to include all Large Oval and Large Circle Kugel Patches, as well as all products manufactured from January 2004 to January 2006, that had the same component design as the recalled manufacturing lots.

49. Upon information and belief, it is possible that additional Kugel Mesh Patches will experience the same defects as the currently recalled models and will need to be recalled as well.

50. As previously mentioned, the FDA conducted investigations of a Cranston, Rhode Island, Kugel Patch manufacturing facility owned, managed, and operated by Defendants. The subsequently issued 2006 EIR, determined, among other things, that Defendants:

a. had excluded memory recoil ring failure events from their complication database, reports, and recall notices, which should have been included;

b. misidentified numerous Kugel Patch complication events;

c. failed to apply product quality hold and release procedures on a timely basis;

d. failed to properly follow procedures for conducting design validation review;

e. failed to identify all actions necessary to correct and prevent recurrence of further ring break and Kugel Patch complications; specifically, Defendant failed to provide justification for including only Extra Large Kugel Patch sizes in the December 2005 recall;

f. failed to provide all reasonably known information regarding numerous Kugel Patch complaints, specifically noting that company officials had "understated" in several reports to the FDA the potential severity of device-related injuries, including three reports involving injuries and one report involving a possible device-related death;

g. failed to perform strength testing on memory recoil rings for all sizes of Kugel Patches before putting them into the stream of commerce;

h. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for memory recoil ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data, actual complaints, and electronic databases.

51. The FDA inspected the Cranston, Rhode Island, Kugel Patch manufacturing facility owned, managed, and operated by Defendants for the second time, from January 23 through March 13, 2007. On April 24, 2007, the FDA issued a "Warning Letter" to Defendants, notifying them that the inspection had **again** uncovered "serious violations of the law" in regards to the quality assurance program used in manufacture of Kugel Patch. These violations were of such a degree and nature that the

FDA determined the Kugel Patch to be "adulterated" under section 501(h) of the Federal Food, Drug and Cosmetic Act. The warning letter specifically mentions, *inter alia*, the following violations:

a. Failure to establish and maintain adequate corrective and preventative action procedures which ensure identification of actions needed to correct and prevent the recurrence of nonconforming product and other quality problems;

b. Failure to establish adequate management controls to ensure that an effective quality system has been established and maintained;

c. Failure to document the implementation of corrective and preventative actions;

d. Failure to validate your device's design to ensure that the device conforms to defined user needs and intended uses;

e. Failure of your firm to establish procedures to completely address the identification, documentation, evaluation, segregation, disposition and investigation of non-conforming product.

The Letter notes that as an example of the fifth enumerated violation, Defendants' "quality system failures" resulted in the delayed recall of the defective Kugel Patches.

52. Additionally, upon information and belief, the ring break issue with the Kugel Patch was not brought to the attention of healthcare community, FDA, or the general public's attention until at least over *20 months* after Defendants knew of the first death resulting from their products.

53. Despite the serious risk of injury (and even death) resulting from the Kugel Patch, Defendants took woefully insufficient steps to notify Plaintiffs of the patches' defects.

54. Evidence shows that Defendants held back on implementing a full recall – and actively notifying patients of the recall – until over a year after the first recall was issued. In fact, evidence shows that for a period of time after the recall was issued, Defendants informed doctors that because this was a "voluntary" recall, patients need not be notified at all.

55. Upon information and belief, Defendants claimed during their expanded recall that there had only been 28 reported ring breaks. Many of which were years before the first recall. In actuality, at least 85 ring breaks had been reported. Defendants only told the health care community, the FDA and the general public about the ring breaks which they confirmed by getting the samples returned. Upon information and belief, if the sample was not returned, Defendants minimized the seriousness of the report and intentionally chose not to include the complaint when providing their statistical analysis to the FDA.

56. At all times relevant, Defendants were engaged in the design, development, manufacture, testing, packaging, promoting, marketing, labeling, distribution and/or sale of the Composix Kugel Mesh Patch in their ordinary course of business. Defendants designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold the devices to hospitals and physicians, knowing that they would be thereby sold to patients who needed hernia repair surgery, including Plaintiffs.

57. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid products were of such a nature that they were not properly designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold, were not suitable for the purpose they were intended and were unreasonably likely to injure users of the products.

58. Plaintiffs are informed and believe, and thereupon allege that Defendants did not timely and/or adequately apprise Plaintiffs, his healthcare providers, the FDA, or the general public of the serious and dangerous risks involved in using Defendants' Kugel Patch , including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, serious infection, the need for additional surgery to removal and/or replace the Kugel Patch, the need for additional surgery to repair perforations caused by the memory recoil ring, as well as other severe and permanent health consequences.

59. Plaintiffs are informed and believe, and thereupon allege that Defendants failed to comply with FDA 510(k) application and reporting requirements.

60. Plaintiffs are informed and believe, and thereupon allege that Defendants misrepresented the known risks inherent in the use of the Kugel Patch.

61. Defendants made certain claims which were distributed and circulated to the medical and healthcare professions that the Kugel Hernia Patch was safe.

62. Plaintiffs are informed and believe, and thereupon allege that Defendants' Kugel Patches, whether recalled or not, are uniformly defective because they are manufactured with them same components and design (dual mesh technology and memory recoil ring) and are therefore subject to the same risks of failure, defects and resulting injury as the recalled Kugel Patches.

63. Defendants were careless and negligent in the design, development, manufacture, testing, packaging, promoting, marketing, labeling, distribution and/or sale of the Kugel Patch.

64. The purpose of Defendants' conduct, directed at patients, physicians and consumers, was to create demand for and sell the Kugel Patches. Each aspect of Defendants' conduct combined to artificially create sales of the Kugel Patches.

65. By reason of the foregoing, Plaintiff has suffered and/or is at extremely high risk of suffering serious and dangerous side effects, including but not limited to bowel perforations, bowel obstructions, chronic intestinal fistulae, death, serious infection, the need for additional surgery to repair a recurrent hernia and/or perforation caused by the memory recoil ring, as well as other severe permanent health consequences.

66. On or about August 30, 2004, Plaintiff STEVEN KELLIE underwent surgery to repair an incisional hernia at Saint Joseph Mercy Hospital in Ann Arbor, Michigan. Plaintiff is informed and believes, and thereupon alleges that he was implanted with 5.4" x 7" Large Oval size Kugel Patch (PC#0010202) during this surgery.

67. The Kugel Patch implanted into Plaintiff STEVEN KELLIE was designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold by Defendants into the stream of commerce to be used by surgeons for hernia repair surgeries, and was further represented by Defendants to be an appropriate, safe, cost effective, and suitable product for such purposes.

68. Plaintiffs are informed and believe, and thereupon allege that the Kugel Patch implanted into STEVEN KELLIE was subject to and part of the FDA recall.

69. Sometime after the Kugel Patch was implanted, Plaintiff STEVEN KELLIE began experiencing, among other injuries, severe abdominal pain, nausea, vomiting, and open wounds and purulent drainage at the location where the patch had been implanted. Plaintiff underwent extensive treatment and several surgical procedures to treat these conditions, none of which were successful. Plaintiff eventually underwent surgery in or around July 2005 to remove the infected mesh. Surgeons found that the Kugel Patch had failed, and that the memory recoil ring had broken and was migrating through his skin on his left side. The mesh was removed in its entirety.

70. Plaintiff STEVEN KELLIE developed severe complications after the Kugel Patch removal surgery. These included, *inter alia*, an abnormal enterocutaneous fistulae, sepsis, purulent drainage, and recurrent incisional hernia. These complications required further extensive treatment and multiple surgical procedures and hospitalizations and were not finally resolved until sometime in early 2008.

71. Plaintiff is informed and believes, and thereupon alleges, that his injuries were a proximate result of his being implanted with the defective and unreasonably dangerous Kugel Patch designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold by Defendants. Plaintiff's physical injuries were of the same nature and extent as the serious adverse events Defendants knew to be associated with the Kugel Patch.

72. Plaintiff's medical condition was and has been continuously monitored by his physicians and other healthcare providers to observe and screen for exacerbation of his injured bowels and other health risks associated with Plaintiff's implantation with a Kugel Patch.

73. Plaintiff will require continuous monitoring of his Kugel Patch related injuries for the remainder of his life. His physical injuries, proximately caused by his implantation with a Kugel Patch, are severe, life threatening, and permanent, and have adversely impacted the quality of his life and the life of his family.

74. As a direct and proximate result of the Defendants' negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the Kugel Patch, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries. Plaintiff has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff STEVEN KELLIE seeks actual and punitive damages from Defendants as alleged herein.

75. As a direct and proximate cause of Defendants' conduct and the defective Kugel Patch, Plaintiff LORI KELLIE has suffered, and will continue to suffer, loss of consortium.

76. At all times mention in this Complaint, Plaintiff LORI KELLIE was and continues to be married to Plaintiff STEVEN KELLIE.

**COUNT I**
**NEW JERSEY PRODUCTS LIABILITY ACT**
**(N.J.S.A. 2A:58C-1 et seq.)**

77. Plaintiff incorporates by reference paragraphs 1 through 80 above, as

78. Defendants had a duty to exercise reasonable and prudent care in the design, development, manufacture, testing, packaging, promoting, marketing, labeling, distribution and/or sale into interstate commerce, including the duty to take all reasonable steps necessary to manufacture and sell a product that was not defective and unreasonably dangerous to consumers and users of the product.

79. Defendants were negligent in that they developed, tested, designed, inspected, marketed, labeled, promoted, distributed and sold a defective product known as the Kugel Patch, knew and were aware of the defects inherent in the product, failed to act in a reasonably prudent manner in marketing the product, and failed to provide adequate warnings of the product's defects.

Defendants breached their duty of reasonable care and failed to exercise ordinary care in the design, development, manufacture, testing, packaging, promoting, marketing, labeling, distribution and/or sale of the Kugel Patch into interstate commerce, in that Defendants knew and had reason to know that implantation of the Kugel Patch into a consumer created a significant risk of his or her suffering unreasonably dangerous health related side effects, including, but not limited to: perforation of the bowel, ring migration through the abdominal wall, abnormal chronic intestinal fistulae, abscesses, bowel obstruction, intense abdominal pain, peritonitis, sepsis, adhesions between the bowels and the Patch, and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the Kugel Patch, the continued risk of

requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

80. Defendants acted negligently, *inter alia*, in the following acts and omissions:

a. Developing, testing, designing, manufacturing, inspecting, marketing, labeling promoting, distributing and selling the Kugel Patch without thorough and adequate pre and post-market testing of the product;

b. designing, developing, manufacturing, testing, packaging, promoting, marketing, labeling, distributing and/or selling, the Kugel Patch while negligently and intentionally concealing and failing to disclose evidence regarding use of the Kugel Patch, which demonstrated the risk of serious harm associated with the use of said product;

c. Failure to undertake sufficient tests to determine whether or not Kugel Patch was safe for its intended use,

d. Failure to disclose and warn regulatory agencies, the medical community, and consumers that Defendants knew and had reason to know that Kugel Patch was indeed unreasonably unsafe and unfit for use by reason of product's defect and risk of harm as discussed herein;

e. Failing to warn plaintiff, his health care providers, and consumers that the Kugel Patch's risk of harm was unreasonable and that there were safer and effective alternative hernia repair treatments available to plaintiff and other consumers.

f. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Kugel Patch;

g. Advertising, marketing and recommending the use of the Kugel Patch, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Kugel Patch;

h. Representing that the Kugel Patch was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i. Failing to disclose to and inform the medical community and consumers that other forms of safer and effective treatments were available for use to treat the conditions for which Kugel Patch was manufactured;

j. Continuing manufacture and sale of the Kugel Patch with the knowledge that said product was dangerous and not reasonably safe, and failing to comply with FDA regulations and policy;

k. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Kugel Patch so as to avoid the risk of serious harm associated with the use of the Kugel Patch as a hernia repair device.

l. Advertising, marketing, promoting and selling the Kugel Patch for uses other than as approved and indicated in the product's label;

m. Failing to design and manufacture the Kugel Patch so as to ensure the device was at least as safe and effective as other hernia repair devices on the market;

n. Failing to ensure the product was accompanied by proper and accurate warnings about possible adverse side effects associated with the use of the Kugel Patch and that the Kugel Patch had a known high risk of suffering a memory recoil ring break and the associated injuries described in this Complaint, which could be life-threatening and permanent;

o. Failing to conduct adequate testing, including post-marketing surveillance to determine the safety of the Kugel Patch; and

p. Failing to establish an adequate quality assurance program used in manufacture of the Kugel Patch

81. Defendants knew and should have known that it was foreseeable that consumers such as plaintiff would suffer injuries as a result of Defendants' failure to exercise ordinary care in the design, development, manufacture, testing, packaging, promoting, marketing, labeling, distribution and/or sale of the Kugel Patch.

82. As a direct and proximate result of the duties breach, the Kugel Patch used in the Plaintiff's hernia repair surgery failed, resulting in the Plaintiff STEVEN KELLIE suffering serious injury, pain and harm.

83. The Defendants' conduct in continuing to market, sell and distribute the Kugel patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating

circumstances in such a sum which will serve to deter the Defendants and others from similar conduct in the future.

84. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## NEW JERSEY PRODUCTS LIABILITY ACT
## (N.J.S.A. 2A:58C-1 *et seq.*)

### DEFECTIVE DESIGN

85. Plaintiff incorporates by reference paragraphs 1 through 88 above, as though fully set forth herein.

86. At all times relevant to this action, Defendants designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold into the stream of commerce the Kugel Patch, including the one implanted into Plaintiff, to be surgically implanted into plaintiffs during hernia repair procedures.

87. The Kugel Patch was expected to, and did, reach its intended consumers, including Plaintiff without substantial change in the condition in which the product was designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold into the stream of commerce by Defendants.

88. At all times relevant to this action, Defendants designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold the Kugel Patch into the stream of commerce in a condition not reasonably fit, suitable, and safe for use in its intended and/or reasonably foreseeable purpose (hernia repair surgery) because its was defective and unreasonably dangerous in its design and formulation. It design and formulation was defective and unreasonably dangerous in ways which include, but are not limited to, one or more of the following:

a. The Kugel Patch, as designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold into the stream of commerce by Defendants was inherently defective and not reasonably fit, suitable, and safe for use in its intended and/or reasonably foreseeable purpose, in that its foreseeable risks of harm exceeded benefits associated with its design.

b. The Kugel Patch, as designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold into the stream of commerce by Defendants was defective in design and formulation, making its use more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with other hernia repair patches;

c. The Kugel Patch causes harmful side effects that outweighed any potential utility;

d. Notwithstanding their knowledge of the inherently defective and unreasonably dangerous condition of the Kugel Patch, Defendants failed to adequately warn Plaintiff, his healthcare providers, or other consumers of the dangers and risks of harm associated with the use of the Kugel Patch.

e. Neither Plaintiff, nor his healthcare providers could have, by the exercise of reasonable care, discovered the Kugel Patch's defective condition or perceived its unreasonable dangers prior to his implantation with the product.

f. In addition, at the time the Kugel Patch left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiff's injuries without impairing the reasonably anticipated or intended function/utility of the Kugel Patch. These safer alternatives designs were economically and technologically feasible.

89. Plaintiff used the product for the purpose intended by Defendants and in a manner normally intended to be used, namely for hernia repair surgery. Defendants had a duty to design, develop, manufacture, and package, label, distribute and sell, a product that was not unreasonably dangerous for its normal, common, intended use.

90. Defendants designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold into the stream of commerce a defective

product that created an unreasonable risk of serious harm to the health, safety, and well being of Plaintiff and other consumers. Defendants are therefore strictly liable for the injuries and damages sustained by Plaintiff proximately caused by his use of the Kugel Patch.

91. By reason of the foregoing, Defendants are strictly liable in tort to plaintiff.

92. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT III**
**NEW JERSEY PRODUCTS LIABILITY ACT**
**MANUFACTURING DEFECT**

**(N.J.S.A. 2A:58C-1 *et seq.*)**

93. Plaintiff incorporates by reference paragraphs 1 through 96 above, as though fully set forth herein.

94. The Kugel Patch contained a manufacturing defect when it left the possession of Defendants. The Patch differs from said Defendants' intended result and/or from other ostensibly identical units of the same product line.

95. The Kugel Patch reached Plaintiff without substantial change in the condition in which the product was manufactured and distributed and/or sold into the stream of commerce by Defendants.

96. Plaintiff used the product in a way that was reasonably foreseeable to Defendants.

97. As a result of the foregoing acts and omissions, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT IV**
**NEW JERSEY PRODUCTS LIABILITY ACT**
**FAILURE TO WARN**
**(N.J.S.A. 2A:58C-1 *et seq.*)**

98. Plaintiff incorporates by reference paragraphs 1 through 101 above, as

99. Defendants designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold the Kugel Patch into the stream of commerce and in the course of same, directly advertised and marketed the Kugel Patch to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the Kugel Patch.

100. At the time the Kugel Patch was designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold into the stream of commerce, and more specifically at the time Plaintiff was implanted with a Kugel Patch, Kugel Patches were defective and unreasonably dangerous when put to their intended and reasonably anticipated use, namely for hernia repair surgery. Defendants failed to adequately warn of the Kugel Patch's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the Product.

101. Prior to the design, development, manufacture, testing, packaging, promoting, marketing, labeling, distribution and/or sale of the Kugel Patch into the stream of commerce, and any recall of the patch, Defendants knew or should have known of the risk of substantial and potentially life threatening danger associated with the intended and reasonably foreseeable use of the Kugel Patch. This known and knowable danger consisted of, a high rate of malfunction of the Kugel Patch, leading to, *inter alia*, bowel perforation, chronic intestinal fistula, severe abdominal pain, fever, sepsis, infection, dense internal scarring, recurrent hernia, and surgical repair procedures. Yet Defendants negligently, knowingly, willfully, intentionally, and wrongfully failed to

provide adequate warnings to Plaintiff, the healthcare community, or other consumers, of this known and reasonably scientifically knowable danger.

102. Defendants failed to provide any warning, labels, or instructions regarding the dangerous propensities of the Kugel Patch mentioned herein that were known or reasonably knowable at the time of distribution. Defendants also failed to provide timely updated warnings, labels, or instructions regarding the dangerous propensities of the Kugel Patch as they became known or knowable after distribution. In violation of their duty to warn of adverse side effects, these Defendants continue to fail to provide any warnings regarding the non-recalled variety of Kugel Patches and continue to fail to provide true and accurate warnings regarding the health risks associated with the recalled Kugel Patches.

103. Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the Kugel Patch; no medical care provider would have used — and no consumer would have accepted implantation with — the Kugel Patch, had those facts been made known to the prescribing healthcare providers and/or the consumers of the Kugel Patch.

104. The Kugel Patch warnings, labels, and instructions provided by Defendants at all time relevant to this action, are and were inaccurate, intentionally misleading, and misinformed and misrepresented the risks and benefits and lack of safety and efficacy associated with the Kugel Patch.

105. Defendants failed to perform, establish or otherwise facilitate adequate testing and/or quality assurance programs; either of which would have shown that the

Kugel Patch posed serious and potential life threatening adverse effects and complications.

106. The health risks associated with the Kugel Patch as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

107. The Kugel Patch, which was designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold into the stream of commerce by Defendants was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

108. On August 30, 2004 when Plaintiff was implanted with the Kugel Patch, Defendants failed to provide any warnings, instructions, or labels regarding the severity and extent of health risks posed by the Kugel Patch, as discussed herein.

109. Plaintiff did not know of the risk of substantial danger associated with the intended and foreseeable use of the Kugel Patch as described herein until the sometime in 2007.

110. Plaintiff used the Kugel Patch in a normal, customary, intended, and foreseeable manner, namely for a hernia repair surgery.

111. The defective and dangerous condition of the Kugel Patch, including the one implanted into Plaintiff, existed at the time they were developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants to distributors and/or healthcare professionals or organizations. At the time Plaintiff had his hernia repair surgery in which the Kugel Patch was implanted, the Kugel

Patch was in the same condition as when it was developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

112. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT V**

**NEW JERSEY PRODUCTS LIABILITY ACT**
**(N.J.S.A. 2A:58C-1 *et seq.*)**

**BREACH OF IMPLIED WARRANTY**

113. Plaintiff incorporates by reference paragraphs 1 through 116 above, as though fully set forth herein.

114. At all times relevant to this action, Defendants and their predecessors and their successors, designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold into the stream of commerce the Kugel Patch, for use as

a surgically implanted hernia repair device and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

115. Defendants knew of the intended use of the Kugel Patch, at the time they designed, developed, manufactured, tested, packaged, labeled promoted, marketed, distributed and/or sold the product for use by plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

116. Defendants impliedly represented and warranted to Plaintiff, his healthcare providers, the healthcare community, and other consumers that the Kugel Patch was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

117. The representations and implied warranties made by Defendants were false, misleading, and inaccurate because the Kugel Patch was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used as it was marketed and intended to be used.

118. Plaintiff, the healthcare community, and other consumers reasonably relied on the superior skill and judgment of Defendants as the developers, testers, designers, manufactures, inspectors, marketing, labeling, promoters, distributors, and sellers of the Kugel Patch, as to whether the Kugel Patch was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Kugel Patch was manufactured and sold.

119. Defendants placed the Kugel Patch into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected

to and did reach Plaintiff without substantial change in the condition in which the Kugel Patch was manufactured and sold.

120. Defendants breached their implied warranty because their Kugel Patch was not fit for its intended use and purpose.

121. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT VI**

**BREACH OF EXPRESS WARRANTY**

122. Plaintiff incorporates by reference paragraphs 1 through 125 above, as though fully set forth herein.

123. Defendants through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the Kugel Patch was safe and fit for use by consumers, was of

merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use.

124. At the time of making such express warranties, Defendants knew and should have known that the Kugel Patch did not conform to the express warranties and representations and that, in fact, the Kugel Patch is not safe and poses serious health risks, of which Defendants did not accurately warn.

125. As a foreseeable, direct, and proximate result of the breach of the express warranties, Plaintiff suffered and will continue to suffer severe and permanent personal injuries, harm, and economic loss.

126. Plaintiff, the healthcare community, and other American consumers relied on the express warranties made by Defendants regarding the safety and efficacy of the Kugel Patch and were reasonable in doing so.

127. Defendants breached their express warranties because the Kugel Patch was and continues to be defective and not reasonably safe for its intended purpose.

128. Defendants expressly represented and warranted to the medical community and consumers, including Plaintiff and his healthcare providers that the Kugel Patch was safe and fit for the purposes intended, that it was of merchantable quality, that it did not pose dangerous health risks in excess of those risks associated with use of other similar hernia repair devices, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

129. Defendants knew and should have known that the representations and express warranties were false, misleading, and untrue in that said Defendants knew the Kugel Patch was not safe and fit for its intended use, and that the Kugel Patch caused its

users serious injuries that were not adequately warned of, identified, or represented by these Defendants.

130. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT VII**

**FRAUDULENT MISREPRESENTATION**

131. Plaintiff incorporates by reference paragraphs 1 through 134 above, as though fully set forth herein.

132. Defendants negligently, knowingly, willfully, wrongfully, and intentionally made false misrepresentations, as previously set forth herein, to Plaintiff, the medical community, and other consumers, including without limitation, the following: (1) the Kugel Patch had been adequately tested prior to marketing; (2) the Kugel Patch did not have dangerous and/or serious adverse health effects and safety concerns; (3) the Kugel Patch was as safe, fit, and effective for its intended use; (4) an adequate quality

assurance program was in place to monitor the Kugel Patch for adverse complications; and (5) multiple reports to the FDA underreporting the severity of device-related injuries.

133. The information distributed by Defendants to the public, the medical community, the FDA, and plaintiff was in the form of reports, press releases, advertising campaigns, print advertisements, commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Kugel Patch. Defendants made the foregoing misrepresentations knowing that they were false. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public, with the intention of inducing Plaintiffs' and other consumers' reliance, purchase, and use of the Product.

134. Defendants made the foregoing representations knowing that they were false. These representations were made directly by Defendants, their agents, and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase and use of the Kugel Patch.

135. Defendants' intent and purpose in making these misrepresentations was to deceive and defraud Plaintiff, other consumers, and the medical community; to gain the confidence of Plaintiff, the medical community, and other consumers; to falsely assure them of the quality of the Kugel Patch and its fitness for use; and to induce plaintiff, the medical community, and other consumers to request, recommend, prescribe, implant, purchase, and continue to use the Kugel Patch.

136. Defendants' misrepresentations were false when made and were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and egregiously without regard to the true facts.

137. In reliance on Defendants' misrepresentations, Plaintiff and his healthcare providers were induced to purchase and use the Kugel Patch. If Plaintiff had known of the true facts and the facts that Defendants had concealed the falsity of Defendants' representation, Plaintiff and his healthcare providers would not have purchased or used the Kugel Patch.

138. Plaintiff's and healthcare providers' reliance on Defendants' misrepresentations was justified and reasonable because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

139. Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the Kugel Patch to the public at large, the medical community, and Plaintiff and his healthcare providers in particular, for the purpose of influencing the sales of a product known by Defendants to be dangerous and defective, and not as safe and effective as alternative hernia repair devices.

140. A foreseeable, direct, and proximate result of Defendants described acts and omissions, Plaintiff was caused to suffer the serious and dangerous side effects as are more specifically described in this Complaint.

141. Defendants knew when they made the aforementioned representations that the representations were false. Defendants intended that Plaintiff and his healthcare

providers would reasonably rely on the representations. Plaintiff and his healthcare providers did rely on these representations and purchased and used the Product, all to his detriment. In this context, Defendants' conduct constituted malice, oppression, and fraud. Plaintiff is therefore intended to recover punitive or exemplary damages.

142. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT VIII**

**FRAUDULENT CONCEALMENT**

143. Plaintiff incorporates by reference paragraphs 1 through 146 above, as though fully set forth herein.

144. Defendants from the time the Kugel Patch was first developed, tested, manufactured, inspected, marketing, labeled, promoted, distributed and sold and up to the present, willfully deceived Plaintiff by concealing from him, the healthcare community, and other consumers the true facts concerning the Kugel Patch, which said Defendants, as

developers, testers, manufacturer, inspectors, marketers, labelers, promoters, distributors and sellers, had a duty to disclose. As set forth above, Defendants, in advance of Plaintiff's use of the Kugel Patch, were aware of the dangerous and defective condition of the Kugel Patch and intentionally withheld this information from Plaintiff, the healthcare community, and other consumers even though these significant dangers were not readily obvious to the ordinary user of the products.

145. Defendants intentionally and fraudulently concealed the following material information:

a. Defendants knew and should have known that the Kugel Patch line of products, at all times relevant, were subject to high degree of risk of memory recoil ring failure resulting in, *inter alia*, bowel perforation, chronic intestinal fistula, severe abdominal pain, fever, sepsis, infection, dense internal scarring, and abdominal disfiguration.

b. Limited testing and adverse event reports revealed the Kugel Patch had an unreasonably high risk of adverse complications given its intended use(s) and higher risk of adverse complications, in addition to, and above and beyond those associated with other similar surgically implanted hernia repair devices.

c. Implantation of the Kugel Patch would not result in a safe and more effective method of hernia repair treatment than other available treatments;

d. Risk of adverse events with the Kugel Patch was not adequately tested prior to marketing of the product, nor sufficiently monitored post-market introduction.

e. Defendants' quality assurance program used in the manufacture of the Kugel Patch violated federal law.

f. Failed to disclose testing as early as early as September 2004 that revealed serious problems with the weld process involving the memory recoil ring.

g. Defendants intentionally and knowingly failed to disclose and intentionally concealed numerous complaints of memory recoil ring failure and other device malfunctions.

h. The Kugel Patch was defective, and caused dangerous and adverse side effects, including, but not limited to the specific injuries specifically described elsewhere in this Complaint.

i. Patients using the Patch would likely suffer bowel injury and recurrent hernia and would require monitoring of these conditions while treating with the Kugel Patch;

j. That complications and failures associated with the Kugel Patch are not limited to the sizes which Defendants have recalled;

k. The Kugel Patch was negligently and defectively manufactured.

l. The Kugel Patch was negligently and defectively designed.

m. Defendants were under a duty to disclose to plaintiff and his physicians, the defective design and manufacture of the Kugel® Patch, which design

and manufacture heightened the risk of suffering the injuries specifically described in this Complaint and suffered by Plaintiff.

146. Defendants fraudulently concealed the above-mentioned information with willful, wanton, and reckless disregard and depraved indifference for the safety and well being of the users of the Kugel Patch, such as Plaintiff.

147. Defendants intentionally concealed and suppressed the true facts concerning the Kugel Patch, although said Defendants were bound to disclose the true facts, with the intent to defraud and mislead Plaintiff, in that these Defendants knew that Plaintiff's healthcare providers would not have implanted the Kugel Patch and Plaintiff would not have accepted its use, if they were aware of the true facts concerning the dangers of the Kugel patch.

148. At all times relevant to this action and herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of the Kugel Patch and willfully deceived Plaintiff, the healthcare community, and other consumers as to the health risks and harmful consequences associated with the use of the Kugel Patch. Defendants knew and were aware of the foregoing, and that the Kugel Patch was not safe, fit, and effective for its intended use, that the use of it is hazardous to human health, and that it has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as described in this Complaint.

149. In reliance upon the false and fraudulent misrepresentations and omissions of Defendants Plaintiff was induced to, and did use the Kugel Patch, thereby sustaining severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff, the healthcare community, and other consumers did not have the

ability to determine the true facts intentionally concealed by Defendants in prescribing and implanting the Kugel Patch, and would not have, respectively, prescribed and implanted same, if the true facts regarding the Patch had not been concealed by these Defendants.

150. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Patch.

151. At the time Defendants failed to disclose the foregoing facts, and at the time Plaintiff used the Kugel Patch, he and the healthcare community were unaware of Defendants' failure to disclose the above mentioned facts.

152. Plaintiff reasonably relied upon misrepresentations made by Defendants where knowledge of the concealed facts was critical to understanding the true dangers inherent in the use of the Kugel Patch.

153. Defendants' conduct was wrongful and constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and purposefully.

154. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT IX**

**NEGLIGENT MISREPRESENTATION**

155. Plaintiff incorporates by reference paragraphs 1 through 158 above, as though fully set forth herein.

156. Defendants made false misrepresentations, as previously set forth herein, to Plaintiff, the healthcare community, and other consumers, including without limitation, the misrepresentation that the Kugel Patch was safe, fit, and effective for use in its intended and reasonably foreseeable manner.

157. Defendants made the foregoing representations without reasonable grounds for believing them to be true. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public, with the intention of inducing Plaintiff, the healthcare community, and other consumers to rely on these representations and purchase and use the Kugel Patch.

158. The foregoing representations by Defendants were in fact false. The Kugel Patch was not safe, fit, and effective for human use in its intended and reasonably foreseeable manner, the use of the Kugel Patch is hazardous to the user's health, and said Patch has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff suffered.

159. In reliance upon the false and fraudulent misrepresentations and omissions made by Defendants Plaintiff, the healthcare community, and other consumers were induced to, and did use the Kugel Patch, thereby causing those persons implanted, including Plaintiff, to sustain severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff, the healthcare community, and other consumers did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by them in prescribing and implanting the Kugel Patch, and would not have, respectively, prescribed and implanted same, if the true facts regarding the Patch had not been concealed and misrepresented by Defendants.

160. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Patch.

161. At the time failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Kugel Patch, Plaintiff and his physicians were unaware of said Defendants' fraudulent misrepresentations and omissions.

162. Plaintiff, the healthcare community, and other consumers reasonably relied upon Defendants' the misrepresentations made by Defendants where knowledge of the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Kugel Patch.

163. Defendants knew when they made the aforementioned representations that the representations were false. Defendants intended that Plaintiff, the healthcare community, and other consumers would reasonably rely on the representations. Plaintiff, the healthcare community, and other consumers did rely on these representations and

purchased and used the Kugel Patch, all to detriment of those whom the product was implanted, including Plaintiff. In this context, Defendants' conduct constituted malice, oppression, and fraud. Plaintiff is therefore intended to recover punitive or exemplary damages.

164. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT X**
**FRAUD AND DECEIT**

165. Plaintiff incorporates by reference paragraphs 1 through 168 above, as though fully set forth herein.

166. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

167. Defendants from the time the Kugel Patch was first developed, tested, designed, manufactured, inspected, marketed, labeled, promoted, distributed, sold and up to the present, willfully deceived Plaintiff, the Healthcare community, and other

consumers by concealing from them and misrepresenting to them, the true facts concerning the Kugel Patch, which Defendants, as the developers, designers, manufacturers, inspectors, labelers, promoters, distributors and sellers had a duty to disclose.

168. Defendants negligently, knowingly, willfully, wrongfully, and intentionally concealed certain material facts, as previously set forth herein, from Plaintiff, the healthcare community, and other consumers, including without limitation, failing to disclose that the Kugel Patch was not safe, fit, and effective for use as a surgically implanted hernia repair device despite being aware at all relevant times of the dangerous and defective nature of the Kugel Patch, as described in this Complaint.

169. Defendants negligently, knowingly, willfully, wrongfully, and intentionally fraudulently represented, as previously set forth herein, to Plaintiff, the healthcare community, and other consumers, including without limitation, that the Kugel Patch was safe, fit, and effective for use as a surgically implanted hernia repair device despite being aware at all relevant times of the dangerous and defective nature of the Kugel Patch, as described in this Complaint.

170. At all times relevant to this action and herein mentioned, Defendants conducted a sales and marketing campaign to promote the sale of the Kugel Patch and willfully deceived Plaintiff, the healthcare community and other consumers as to the health risks and harmful consequences associated with the use of the Kugel Patch. Defendants knew and were aware of the foregoing, and that the Kugel Patch was not safe, fit, and effective for its intended use, that the use of it is hazardous to human health, and

that said Product has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff as described in this Complaint.

171. At all relevant times the Kugel Patch was not safe, fit, and effective for human use as a surgically implanted hernia repair device, as use of the Kugel Patch is hazardous to health, and said product has a serious propensity to cause users to suffer serious injuries, including without limitation the injuries Plaintiff suffered.

172. Defendants intentionally concealed and misrepresented the true facts concerning the Kugel Patch, although Defendants were bound to disclose the true facts. Defendants concealed and misrepresented the foregoing material facts knowing that they were false. These representations were made directly by Defendants, their authorized agents, including sales agents, and in publications and other written materials directed to the public and the medical community, with the intention of inducing Plaintiffs' and other consumers' reliance, purchase, and use of the Product.

173. In reliance upon false and fraudulent misrepresentations and omissions made by Defendants Plaintiff and his healthcare providers were induced to, and did use the Kugel Patch, thereby causing Plaintiff to sustain severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff, the healthcare community, and other consumers did not have the ability to determine the true facts intentionally concealed and misrepresented by them in prescribing and implanting the Kugel Patch, and would not have, respectively, implanted same, if the true facts regarding the Patch had not been concealed and misrepresented by them.

174. Defendants had sole access to material facts concerning the defective nature of the Kugel Patch and its propensity to cause serious and dangerous side effects

in the form of dangerous injuries and damages to persons who are implanted with the Patch.

175. At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Kugel Patch, neither Plaintiff nor his healthcare providers were aware of the Defendants' fraudulent misrepresentations and omissions.

176. Plaintiff, the healthcare community, and other consumers reasonably relied upon Defendants' misrepresentations, where knowledge of the concealed and misrepresented facts was critical to understanding the true dangers inherent in the use of the Kugel Patch.

177. Defendants knew when they made the aforementioned representations that the representations were false. Defendants intended that Plaintiff and his healthcare providers would reasonably rely on the representations. Plaintiff did rely on these representations and purchased and used the Kugel Patch, all to his detriment. In this context, Defendants' conduct constituted malice, oppression, and fraud.

178. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XI

## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A. 56:8-1 *et seq.* )

179. Plaintiff incorporates by reference paragraphs 1 through 182 above, as though fully set forth herein.

180. The Kugel patch is considered "merchandise" as that term is defined by N.J.S.A. 56:8-1(c).

181. The Defendants are designers, manufacturers, promoters, marketers, developers, sellers and/or distributors of the Kugel Patch.

182. Defendants knew or should have known that the Kugel Patch was unreasonably dangerous and defective, and had a propensity to cause serious and potentially life threatening side-effects.

183. Notwithstanding the foregoing, the Defendants omitted material facts in the disclosures it made to the public, the medical community and to consumers, including Plaintiff herein, concerning the use and safety of the Kugel patch.

184. The Defendants violated the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et. seq.)* in that they made untrue, deceptive, and/or misleading representations of material facts, and omitted and/or concealed material facts from the public, including Plaintiff herein, concerning the use and safety of the Kugel Patch.

185. Defendants' practice of promoting the Kugel patch created and/or reinforced a false impression as to its safety, which placed all consumers of the Patch at risk for serious injury and lethal side effects.

186. The Defendants' statements and omission were made with the intent that Plaintiff herein, and her physicians, would rely on such statements and omissions.

187. Plaintiff used the Kugel Patch for personal purposes and suffered ascertainable losses of money as a result of the Defendants' use or employment of the methods, acts, or practices alleged herein.

188. The aforesaid promotion, statements and/or omissions concerning the Kugel patch by Defendants constitute an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission in connection with the same or advertisement of merchandise or services by Defendants, in violation of the New Jersey Consumer Fraud Act.

189. As a direct and proximate result of Defendants' acts of consumer fraud, Plaintiff has suffered an ascertainable loss -- economic loss that includes the purchase price of Kugel Patch and additional out-of-pocket healthcare related costs -- for which the Defendants are liable to Plaintiff for treble their actual damages.

190. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer

economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT XII**

**LOSS OF CONSORTIUM**

191. Plaintiff incorporates by reference paragraphs 1 through 194 above, as though fully set forth herein.

192. LORI KELLIE is and was at all times relevant to this action, the legal wife of STEVEN KELLIE, and they have at all times relevant to this action, lived together as husband and wife.

193. As a proximate result of the personal injuries suffered by STEVEN KELLIE, LORI KELLIE has been deprived of the benefits of their marriage including her husband's love, affection, society, and consortium, and other husbandly duties and actions. LARRY KELLIE provided LORI KELLIE with all of the benefits of a marriage between husband and wife, prior to his implantation with the Kugel Patch and the resulting injuries described above.

194. LORI KELLIE has also suffered the permanent loss of her husband's daily and regular contribution to the household duties and services, which each provides to the household as husband and wife.

195. LORI KELLIE has also incurred the costs and expenses related to the medical care, treatment, medications, and hospitalization to which LARRY KELLIE was subjected for the physical injuries he suffered as a proximate result of his ingestion of the Kugel Patch. LORI KELLIE will continue to incur the future costs and expenses related to the care, treatment, medications, and hospitalization of MR. KELLIE due to his injuries from the Kugel Patch.

196. LORI KELLIE has suffered a loss of consortium, as described herein, including the past, present, and future loss of her husband's companionship, services, society, and the ability of STEVEN KELLIE to provide LORI KELLIE with the benefits of marriage, including *inter alia*, loss of contribution to household income and loss of household services, all of which has resulted in her pain, suffering, and mental and emotional distress and worry.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT XIII**
**PUNITIVE DAMAGES UNDER COMMON LAW, PUNITIVE DAMAGES ACT (N.J.S.A. 2A:15-5.9, *et. seq.*) and PRODUCT LIABILITY ACT (N.J.S.A. 2A:58C-1 *et. seq.*)**

197. Plaintiff incorporates by reference paragraphs 1 through 200 above, as though fully set forth herein.

198. Plaintiffs are entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare. Defendants intentionally and fraudulently misrepresented facts and

information to both the healthcare community and the general public, including Plaintiff, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the Kugel Patch. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with the implantation of said product, and intentionally downplayed the type, nature, and extent of the adverse side effects of being implanted with the Kugel Patch, despite Defendants' knowledge and awareness of the serious and permanent side effects and risks associated with use of same.

199. Defendants had knowledge of, and were in possession of evidence demonstrating that, the Kugel Patch caused serious physical side effects. Defendants continued to market said product by providing false and misleading information with regard to the product's safety and efficacy to the regulatory agencies, the medical community, and consumers of Kugel Patch, notwithstanding Defendants' knowledge of the true serious side effects of the Kugel Patch,

200. Defendants failed to provide accurate information and warnings to the healthcare community that would have dissuaded physicians from surgically implanting the Kugel Patch and consumers from agreeing to being implanted with the Kugel Patch, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and implanting the Kugel Patch.

201. As a result of the foregoing acts and omission, Plaintiff STEVEN KELLIE suffered severe and permanent physical injuries and has endured substantial pain and suffering. He has incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiff has lost past earnings and has

suffered a loss of earning capacity. Plaintiff has suffered and will continue to suffer economic loss, and has otherwise been physically, emotionally and economically injured. Plaintiff's injuries and damages are permanent and will continue into the future. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.

202. The aforesaid conduct of Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiffs herein, thereby entitling the Plaintiff to punitive damage in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment against each of the Defendants as follows:

A. Awarding actual damages to Plaintiffs incidental to Plaintiff's use of Kugel Hernia patch in an amount to be determined at trial;

B. Awarding treble and/or punitive damages to the Plaintiff;

C. Awarding pre-judgment and post-judgment interest to the Plaintiff;

D. Awarding the costs and the expenses of this litigation to the Plaintiff;

E. Awarding reasonable attorneys' fees and costs to the Plaintiff as provided by law;

F. Granting all such other relief as the Court deems necessary, just and proper.

**DEMAND FOR JURY TRIAL**

The Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

Dated: June 13, 2008

James J. McHugh, Jr.
Regina Sharlow Johnson
Niki A. Trunk
**LOPEZ MCHUGH, LLP**
712 East Main Street, Suite 2A
Moorestown, NJ 08096
Telephone: (856) 273-8500
Facsimile: (856) 273-8502

And

1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914
***Attorneys for Plaintiffs***

**CERTIFICATION PURSUANT TO RULE 4:5-1**

Pursuant to Rule 4:5-1, the undersigned certifies, upon information and belief, that the matter in controversy is not the subject of any other action pending in any other court, or a pending arbitration proceeding, nor is any other action or arbitration regarding the subject of this action contemplated.

Dated: June 13, 2008

James J. McHugh, Jr.
Regina Sharlow Johnson
Niki A. Trunk
**LOPEZ MCHUGH, LLP**
712 East Main Street Suite 2A
Moorestown, New Jersey 08057
Telephone: (856) 273-8500384-1515
Facsimile: (856) 273-8502384-6371

and

1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914

*Attorneys for Plaintiffs*

**CERTIFICATION OF NOTICE**

Pursuant to N.J.S.A., 56:8-20, Plaintiff is mailing a copy of this Complaint and Jury Demand to the Office of Attorney General, CN-006, Trenton, New Jersey, within (10) days of the filing of this Complaint and Jury Demand.

Dated: June 13, 2008

James J. McHugh, Jr.
Regina Sharlow Johnson
Niki A. Trunk
**LOPEZ MCHUGH, LLP**
712 East Main Street Suite 2A
Moorestown, New Jersey 08057
Telephone: (856) 273-8500
Facsimile: (856) 273-8502

And

1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914

*Attorneys for Plaintiffs*

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, Attorney James J. McHugh of Lopez McHugh, LLP, is designated as trial counsel in this matter.

Dated: June 13, 2008

James J. McHugh, Jr.
Regina Sharlow Johnson
Niki A. Trunk
**LOPEZ MCHUGH, LLP**
712 East Main Street Suite 2A
Moorestown, New Jersey 08057
Telephone: (856) 273-8500384-1515
Facsimile: (856) 273-8502384-6371
And
1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914

*Attorneys for Plaintiffs*

**LOPEZ MCHUGH, LLP**
JAMES J. McHUGH, JR.
REGINA SHARLOW JOHNSON
NIKI A. TRUNK
712 East Main Street, Suite 2A
Moorestown, New Jersey 08057
Telephone: (856) 273-8500
Facsimile: (856) 273-8502

And

1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914

*Attorneys for Plaintiff*

| | |
|---|---|
| STEVEN KELLIE, an individual, and LORI KELLIE, an individual, and as husband and wife,<br><br>*Plaintiffs,*<br><br>vs.<br><br>DAVOL, INC., a corporation, BARD DEVICES, INC., a corporation, and C.R. BARD, Inc., a corporation, and DOES 1 through 100, inclusive,<br><br>*Defendants.* | **SUPERIOR COURT OF NEW JERSEY CAMDEN COUNTY**<br><br>**LAW DIVISION**<br><br>Docket No.<br><br>**CIVIL ACTION**<br><br>**NOTICE TO DEFENDANTS TO PRESERVE AND NOT DESTROY OR ALLOW SPOLIATION OF EVIDENCE** |

## NOTICE TO ALL DEFENDANTS TO PRESERVE AND NOT DESTROY OR ALLOW SPOLIATION OF EVIDENCE

**PLAINTIFFS HEREBY DEMAND AND REQUEST THAT ALL DEFENDANTS NAMED AND IDENTIFIED IN THIS ACTION, INCLUDING DEFENDANTS' OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, AND REPRESENTATIVES, TO UNDERTAKE ALL NECESSARY ACTIONS AND**

**PROCEDURES TO ENSURE THE PRESERVATION, NON- DESTRUCTION, AND NON-SPOLIATION OF ALL DOCUMENTS, BOTH ELECTRONIC AND WRITTEN, MATERIALS, ITEMS, THINGS, EVIDENCE, AND/OR COMMUNICATIONS, BOTH WRITTEN OR ELECTRONICALLY GENERATED, MAINTAINED, AND/OR STORED, WHICH ARE IN THE POSSESSION, CUSTODY, OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS CONTROL, OR TO AND/OR FROM WHOM ANY PARTY TO THIS ACTION HAS ACCESS, AND WHICH MAY, IN ANY MANNER, BE RELEVANT OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR THE ALLEGATIONS OF THE COMPLAINT FOR DAMAGES IN THIS ACTION.**

**PLAINTIFFS ALSO HEREBY DEMAND AND REQUEST THAT ALL ELECTRONIC DOCUMENTS AND MATERIALS SHALL BE STORED AND MAINTAINED IN THEIR NATIVE FORMAT, AND SHALL NOT BE DELETED OR DESTROYED NOTWITHSTANDING ANY PROCEDURES UTILIZED BY DEFENDANTS FOR THE DESTRUCTION OF ELECTRONIC DOCUMENTS AND MATERIALS WITHIN ANY PERIOD AFTER SERVICE OF THIS NOTICE TO PRESERVE AND NOT DESTROY EVIDENCE.**

Dated: June 13, 2008

James J. McHugh, Jr.
Regina Sharlow Johnson
Niki A. Trunk
LOPEZ MCHUGH, LLP
712 East Main Street Suite 2A
Moorestown, New Jersey 08057
Telephone: (856) 273-8500
Facsimile: (856) 273-8502

And

1123 Admiral Peary Way, Quarters K
Philadelphia, PA 19112
Telephone: (215) 952-6910
Facsimile: (215) 952-6914

*Attorney for Plaintiffs*